Martin, J.
The plaintiff demands the rescission of the sale of a slave, on the ground of his being epileptic, and in the habit of running away; circumstances which, he alleges, were deceitfully and fraudulently concealed from him. By a special clause in the bill of sale, it is declared, that the seller does not guarantee that the slave is free from any disease, habit of running away, or other defect.
The answer denies only the alleged fraudulent or deceitful concealment. To this is added a general demurrer.
*62 There was a verdict, and judgment for the defendant, and the plaintiff appealed.
The record shews, that the defendant having introduced a witness to shew, that the slave was not epileptic, the plaintiff objected thereto, and the objection being over-ruled, took his bill of exceptions.
Mrs. Englesheim deposed, that she knew the slave bought by the plaintiff from the defendant, who is the object of the present suit. That she heard the plaintiff propose to the latter, to take the slave back, as he was epileptic, observing, that the defendant ought to recollect, that when he sold him to the plaintiff, the latter mentioned, he did not think any thing of the sore on his leg, but that if he had epileptic fits, or any other redhibitory disease, he would not take him on any consideration. When the defendant replied, the fellow had only a sore on one of his legs, and that he did not mention any other disorder in the bill of sale; but that this was only to avoid difficulties. He gave his word of honor, that the slave had no epileptic fits. He acknowleged, that the above conversation took place at the time of the sale, but that, although the slave, while in his posses *63 sion, had fallen five or six times, had burnt his arm, and would have perished, had not assistance been procured; he was not convinced, that these were epileptic fits; and that, for this reason, he gave his word, that the slave had no incurable disease; that he would consider of the proposition of taking him back, and would give his answer in three or four days. The witness, from this conversation, verily believed, the defendant knew the slave was subject to epileptic fits, when he sold him.
Salon deposed, that about two years ago, he was working at the plantation of Chapduc, where he had the slave under his order; that he heard him, on the upper floor of the mill, groaning, as suffering great pain; that as soon as he saw the defendant, then his owner, he informed him of it, when he replied, he cared not whether he died; and begged the deponent to keep him, which he refused, fearful of employing him, as he was falling into epileptic fits, which made it dangerous to work with him. It was then understood between Chapduc and the defendant, that the slave was epileptic. The defendant told the witness not to be afraid of any thing happening to *64 the slave, for he felt the approaches of the fit. During the fits, the slave foamed at the mouth, and rolled his eyes most horribly. This was in June or July, 1818.
Renaud deposed, that in the beginning of August, 1819, he was present, when the defendant offered to sell the slave to the plaintiff, for $600, payable in one year. He said the slave had a sore leg; felt no inconvenience from it, and worked full as well. That he would not guarantee any thing in the bill of sale, as to that sore leg, but the plaintiff might rest assured, it was a slight defect. The plaintiff said, if the fellow was epileptic, or had any redhibitory disease, he would have nothing to do with him; and on the assurance of the defendant, that he had only a sore leg, he determined on purchasing. Fifteen or twenty days after, the slave fell into epileptic fits, and has fallen since, many times. When he drinks strong liquor, he invariably has fits. The plaintiff had hardly any benefit from him since the purchase, as he is addicted to drinking and running away: he has been kept in irons for some time.
Lamothe, the city jailor, deposed, that the slave was sold by the defendant to the plain *65 tiff, in jail. The defendant sold him as he was, and declared him to be a bad subject; he had a sore leg. The witness was present at the first conversation of the parties, about the sale; he did not hear the defendant say the slave was epileptic, a run-away, or thief. He has always known him for a bad negro, mauvais sujet.
Fontaine deposed, he was the defendant’s overseer during the seven or eight months preceding the sale. During that time, the slave behaved well and had no fits, to the witness’s knowledge. He would have been worth, if he had not been afflicted with a sore leg and addicted to run away, $2000.
Bourgeois deposed, he knew the slave for the four years preceding the sale : he was a fine looking fellow, a creole and something of a carpenter. Had he not been addicted to run away and had his leg not been sore, he would have sold for $3000.
Beckle, a carpenter, deposed the slave is a good sawyer and hewer.
We are not informed by the record, of the name of the witness referred to in the bill of exceptions, and from the nature of the objection, I take him to be Fontaine, whose testi *66 mony tends to shew, that the slave was not subject to epileptic fits before the sale; but as his testimony shews, that he had no fit during seven or eight months, this circumstance might go some way in repelling the idea of a deceitful and fraudulent concealment in the defendant, as it tends to shew, that he might, as well as his overseer, be ignorant of the epilepsy of the slave. It does not appear to me, that the testimony was illegal.
Our attention is next drawn to a part of the judgment, in which it is stated, that the judge told the jury, that the bill of sale prevented the defendant from being liable in the ordinary way, for the diseases prohibited by law. It is, and I believe correctly, objected to by the defendant’s counsel, that even if this part of the charge was erroneous, the plaintiff cannot be relieved against it in this court, as he did not file his bill of exceptions, nor complain of it in the district court.
It appears to me, the opinion expressed by the court is correct; warranty for redhibitory diseases is not of the essence, but only of the nature of the contract of sale, was introduced for the protection of vendees; and nothing prevents its being excluded from the *67 contract by an express stipulation, as in the present case.
The plaintiff and appellant urges, that the judgment is erroneous, inasmuch as the testimony shews, that the defendant knew of the existence of the redhibitory defects complained of, before the sale, and did not make them known. 1 Martin, 149, Macarty vs. Bagneres, Cur. Phil. 328, n. 28 & 30.
The defendant's counsel urges, that as to his knowlege of the existence of the redhibitory disease, the testimony is contradictory ; and on this knowlege, it was the province and right of the jury to decide; that their decision, if erroneous, could be properly set aside, on a motion for a new trial only, and in such a case, this court would not disturb the finding of the jury. 5 Martin's Rep. 323. 8 id. 363, 393. That there is good reason to presume, from the low price, or other circumstances, that the plaintiff knew of the defect: Cur. Phil. com. ter. cap. 13, n. 29, ff. 21, 1, 1, sec. 6, in which case, there was no necessity for any disclosure by the defendant.
The defendant’s answer admits, as it does not deny, the existence of the epilepsy and the habit of running away; nothing is put in *68 issue but the deceitful and fraudulent concealment of these rehibitory defects. I have no doubt, that the defendant was bound to disclose them, unless they were known to the plaintiff; and therefore, if he withheld that knowlege, he concealed fraudulently and deceitfully. He was bound to prove this disclosure ; he has not done so; we must conclude, he did not disclose. So that the fraud and deceit is manifest, unless the knowlege of the plaintiff rendered this disclosure vain and needless : lex neminem cogit ad vana.
The counsel insists, that the modicity of the price is evidence that these defects were known. A witness swears, had he not had a sore leg and been a run-away, he w as worth $3000; another $2000. The price given is $600, at 12 months; less than one-third of the smallest sum. The circumstance of his being sold in jail, without any warranty, is presented as one, from which the knowlege of his being a run-away may well be implied in the plaintiff.
The modicity of the price; the place of the sale; the stipulation that the defendant would not be liable for any disease or defect, even redhibitory ones, are circumstances *69 which may be supposed to have gone a considerable way in inducing the jury to imply a knowlege in the plaintiff. They may have refused credit to the principal witness, Mrs. Englesheim, on account of some circumstance which affected her credibility. The judge mentions her near connection to one of the parties as such, and declares himself satisfied with the verdict.
It is true, the facts stated in the judgment cannot control, or be taken as, a statement on which this court may act; but the opinion of the judge, who tried the cause, of the correctness of the verdict, whether expressed in over-ruling a motion for a new trial, or in giving his judgment, is satisfactorily shewn by his declaration in his own court. I do not take his suggestion of the fact that considerations of friendship and connection, induced the jury to disbelieve a witness, as conclusive. It suffices, that they may have existed.
The neglect of the plaintiff, to apply for a new trial, is a circumstance which adds to the weight of others.
On the other side, the evidence in favour of the plaintiff, is so positive, and must be so decisive, if believed, that I think the verdict *70 of the jury ought not to be conclusive upon us. I feel inclined to reverse the judgment and remand the case, with directions to the judge to submit it to a new trial.
Davesac for the plaintiff, —for the defendant.