JUNE TERM, 1844.                      95

The Branch of the Bank of the State of Alabama at Mobile v. Collins.

---

# THE BRANCH OF THE BANK OF THE STATE OF ALABAMA AT MOBILE v. COLLINS.

1. A director of the Branch Bank at Mobile receiving the compensation provided by law as such director, cannot make a contract with the board for compensation for extra services, whilst he continues a member of the board of directors.
2. An order of the board of directors allowing a compensation of $1,000, each, to to the members of the board, constituting the "Real Estate Committee," is illegal and void.
3. The board of directors may compensate one of their number for services rendered to the Bank previous to his connection with it as one of its directors.
4. Where work was done by other mechanics for the Bank, under the superintendence of one of the board of directors, the board might lawfully direct the compensation to be paid to him for the use of those doing the work.
5. Where money is paid to a director by order of the board, not authorized by law, the Bank may recover it as so much received to its use.

Writ of error to the Circuit Court of Mobile County.

Assumpsit by the Bank to recover certain moneys from Collins, had and received to the use of the Bank.

At the trial, the proof was that this action was brought by order of the Governor, by virtue of a joint resolution of the General Assembly, approved 14th February, 1843.

The defendant was a director of said Bank from the 9th of April, 1842, until February, 1843. He received from the Bank

96     ALABAMA.

The Branch of the Bank of the State of Alabama at Mobile v. Collins.

the full compensation provided by law for a director, and also the sum of 1,000 dollars, as a compensation for his services as a member of the real estate committee, that being a committee appointed by the board of directors of the Bank, during the same period of time, for which he received his pay as a director. He also received from the board of directors several sums of money for work and labor performed for the Bank during the same period; as also for work and labor of mechanics employed and superintended by him. These payments were for the sums, and of the dates, which follow :

30th December, 1842, · · · · · · · · · · · · · · 934 39
3d January, 1843, · · · · · · · · · · · · · · · · ·1,000 00
7th January,  "  · · · · · · · · · · · · · · · · 433 11
3d February,  "  · · · · · · · · · · · · · · · · 389 25

The defendant proved that the sum of 934 38-100 dollars, was for work and labor done for the board before the passage of the joint resolution, and before he was a director: the sum of 433 11-000 dollars and 389 25-00 dollars, was for work and labor done by other mechanics, superintended only by him: these sums were paid them by the Bank, and they only passed through his hands. He also offered evidence to prove that the real estate of the Bank required some person to superintend it, to rent, lease, &c.—-that a thousand dollars was a reasonable compensation, to the person so employed, and that he was, perhaps, the most competent person in the city, being a master builder. He also offered evidence to prove that all the sums paid to him had been approved by the board of directors, and by them ordered to be paid, but the witness did not know whether there was any written evidence of this upon the minutes of the board.

This was the entire evidence, and the plaintiff requested the Court to charge the jury—

1. That it was not competent to the board of directors to make a contract with one of their own body, for extra compensation in taking care, or in any manner supervising or superintending the interest or the property of the Bank; that the compensation allowed by law to the directors, was in full of services of every kind in supervising, superintending, or otherwise controlling the business and assets of the Bank; and that if the defendant, while a director of the Bank, acted as one

of a committee, and was employed in taking care of, and leasing the real estate belonging to the Bank, the board had no authority to allow, nor the defendant to receive the sum of one thousand dollars as a compensation therefor, and the plaintiff must recover.

2. That to prevent a recovery in this case, it was incumbent on the defendant to show that the sums so received by him were appropriated and ordered to be paid by some resolution or memorandum or the minutes of the board.

3. That if the jury should find that the payments of the said sums of money were made subsequent to the meeting of the General Assembly, on the first Monday in December, 1842, then they were made illegally, and the plaintiff could recover in this form of action.

These instructions were refused, and the refusal is now assigned as error.

PHILLIPS, for the plaintiff in error, insisted that the contract for compensation was entirely void, on the principle that the agent could not contract with himself. Independent of this, the services paid for were such as were within the ordinary duties of a director, and therefore fully compensated by the salary provided by law. [McGehee v. Lindsay, 6 Ala Rep. 16.]

DARGAN, with whom was CAMPBELL, for the defendant, argued:

1. That the services rendered in relation to the real estate, were not within the general duties of the defendant as a director, and therefore he could contract for a compensation; or if he could not contract he was entitled to a compensation commensurate with the worth of the services.

2. As to the payments for work and labor there was no pretence that these were unjust. The resolution declaring previous payments illegal could not affect the right.

3. The action is misconceived, inasmuch as it should have been case against such of the directors of the Bank as concurred in making the contract, or the appropriation, if either was illegal, or not within their authority.

13

GOLDTHWAITE, J.—We shall consider the case present-ed by the bill of exceptions, 1st—With reference to the money received ·by the defendant in consequence of the resolution of the board of directors to allow compensation to the members of the real estate committee: 2d—With reference.to the money paid him for services performed before his connection with the Bank: And, 3d—in regard to the moneys received from the Bank, and paid out by him to others, performing work and labor for the Bank, under his superintendance.

1. It seems to us that the extra compensation of one thou-sand dollars, was allowed by the board of directors, and receiv-ed by the defendant, in direct opposition to positive law.  Dur-ing the whole period that the defendant was a director of the Bank, his compensation was fixed by statute, at seven dollars for each day, he was engaged in the discharge of his duties as such an officer. [Clay's Dig. 109, § 24.]  What their duties are, is ascertained by reference to the charter of the Bank: this provides that for its management a certain number of di-rectors shall annually be elected by the General Assembly ; and the president and directors, for the time being, are invest-ed with power to appoint and remove the cashier, and such of-ficers and clerks under them, as shall be necessary to execute its business ; also to allow them such compensation for their services as shall be reasonable and just.   [Ib. 109, § 25.]

Here then, we perceive a compensation as provided by posi-tive enactment is to be paid to each director for his services in the *management* of the Bank.   The management of its real ·estate was as much a duty imposed by the charter upon the directors as any other matter confided to their charge; and there is no pretence for extra compensation for this which will not as well apply to any other duty.   But conceding that some services could be performed by a director out of the ordinary course of his duties as such, yet he would be entitled to no compensation for them, so long as his relation with the Bank in that character continued.   He cannot, at the same time, be a servant of the directors and a director too.   The relation of master and servant in the same individual is incompatible, and cannot exist.   It would be found impracticable to secure fideli-ty in the execution of a trust, if the same person is to perform services with respect to it, and afterwards judge, not only of

the manner in which the services are performed, but also of the compensation to be allowed therefor. It would be impossible, when the director became the servant, to determine that the necessity for his services was not induced by his own acts. Common sense would seem to lead to the conclusion, that such services would be considered as merely gratuitous acts, and and that any compensation to be allowed for them, must depend entirely upon the will of the person for whom they were rendered. Such is the light in which they are considered by law, and no action can be maintained to enforce compensation.

No legal effect can be given to the resolution of the board allowing this extra compensation, because the directors were not authorized to act in reference to the subject matter. They were there for the purpose of managing the concerns of the Bank, not for the purpose of voting themselves or their colleagues compensation; whether for extra, or for ordinary services. The law had already determined what their duties should be, and fixed the amount they should receive. All services beyond those provided for, if indeed any such could be rendered, were either purely gratuitous, or if otherwise, dependent for compensation upon the future action of the Legislature; which stands to the Bank in the relation of the authorized agent of the people of the State, who are the stockholders in these institutions. This necessarily disposes of the first question, and shows that the receipt of the thousand dollars was illegal. The consequence is, that it was money received to the use of the Bank, which may be recovered if this is the proper form of action.

2. The second question, is that which arises upon the payment of money to the defendant, for services performed by him previous to his connection with the Bank as one of its directors. The payment was made on the 30th December, 1842, and the act under which this suit is supposed to warrant the recovery of this item, was approved the 14th of February, of the ensuing year. This act provides for the appointment of commissioners to examine and investigate the expense account of this Bank, and to determine upon the legality of each item of expenditure; and amongst other matters, " that all allowances and appropriations made by the said Branch Bank since,

[the meeting of the Legislature,] are thereby declared illegal;" and the Governor is directed to order suit to be instituted for the recovery of such allowances or appropriations. We apprehend this can only be considered as a declaration of the opinion of the Legislature, that the allowances were not warranted by the existing laws. It is certain, however, that no effect can be given to it by the judiciary, unless under the circumstances attending these appropriations, they were not warranted by the laws in force, when they were made. It will be seen that this item was for work and labor performed by the defendant for the Bank, before he was a director; and it cannot be doubted, we think, that it was the exercise of the proper and ordinary powers of the board to direct its payment. Even if it was otherwise, and the defendant had wrongfully acquired that sum, and the Bank had afterwards sued for it, the defendant would be permitted to retain the amount legally due for services performed under these circumstances, as it is clear that he could maintain a cross action for what he reasonably deserved to have.

3. The other class of items are without any legal ground upon which to rest the claim for recovery. It appears from what was proved in relation to them, that the moneys were paid by the defendant to other persons, for work and labor done by them upon the real estate of the Bank, under the supervision of the defendant; and we must infer, as no attempt was made to prove the contrary, that the payments were reasonable and just. This seems to be entirely within the proper province of the defendant as a director, and it was unimportant whether the payments were made directly to the workmen, or were made to the defendant, to be paid to them. In the latter case, the defendant completely discharged himself when he showed the services performed, and the payment of the money received by him as their agent.

4. It is argued, however, that the action should have been at the suit of the State against the defendant for a breach of duty, instead of by the Bank, for the recovery of the money illegally received. This argument does not seem to rest on a sound basis, for if it was conceded that such an action might be maintained, it does not follow that this is irregular. The sufficient answer to it is, that the defendant has money in his

hands which of right belongs to the Bank, and therefore that institution is well warranted in suing for it.

Our conclusion is, that the judgment of the Circuit Court is erroneous, and therefore it is reversed and remanded.

COLLIER, C. J.—I entirely concur in the conclusions just expressed by my brother GOLDTHWAITE, but as this case is one of more than ordinary interest, and the principles upon which it rest may decide many others, I avail myself of the occasion to subjoin a few remarks.

It may be conceded, that a corporation aggregate, in virtue of its general powers, may contract with persons who are members of it; and the contract is not on this account invalid; the member thus contracting must be regarded as to that contract a stranger, rather than a corporation, Aug. & A. on Cor. 2d ed. 169, 212, and cases there cited ; Pope v. Brandon et al. 2 Stew. Rep. 401.   But this is the law in respect to private corporations only.   In the popular meaning of the term, nearly every corporation is public, inasmuch as they are created for the *public benefit ;* but if the whole interest does not belong to the government, or, if the corporation is not created for the administration of political or municipal power, the corporation is private.   " A *Bank* for instance may be created by the government for its own uses; but if the stock is owned by private persons, it is a private corporation, although, it is erected by the government, and its objects and operations partake of a public nature." [Aug. & A. on Corpo. 23; Trustees, &c. v. Winston, 5 Stew. & P.'s Rep. 17.]   And in respect to the late Bank of the United States, it was said, if its stock belonged exclusively to the government, it would be a public corporation; but inasmuch as there were other owners of the stock, it was held to be a private corporation.   [Dartmouth College v. Woodward, 4 Wheat. Rep. 668; 2 Kent's Com. 222.   See also Owen et al. v. The Branch Bank at Mobile, 3 Ala. Rep. 258; The Bank of the State v. Gibson's Adm'r. 6 Ala. Rep. 814.]   These citations incontestably show, that the State Bank and Branches being the *exclusive* property of the State are public corporations; and that the State is the sole corporator.   So, that in the case before us, the question cannot possibly arise, whether a corporation may employ

102 ALABAMA.

The Branch of the Bank of the State of Alabama at Mobile v. Collins.

one of its members as an agent, or enter into any other contract with him.

The second section of the act which created the plaintiff a corporation, expressly provides that the Legislature shall annually elect a president and directors "for the management of the concerns of the said Branch Bank;" the third section, among other things, declares that, " The president and directors for the time being, shall have power to elect and remove the cashier, and such other officers and clerks under them as shall be necessary to execute the business of the said Branch Bank, and allow them such compensation for their services as shall be reasonable and just." [Clay's Dig. 97.] By the act of 1839, " to compensate the directors of the Bank of the State of Alabama and its several Branches," (Clay's Dig. 109, § 24,) it is enacted, that the directors of the Branch Bank at Mobile shall receive "seven dollars per diem, for every day they may be engaged in the discharge of their duties as directors; and it shall be the duty of the cashier, under the superintendence of the president in each Bank, to keep a regular account of the days of service rendered by each director, and transmit the same to the presiding officer of each house of the General Assembly, and the payment of the sums due the different directors shall be provided for by an act of appropriation, by the General Assembly, at every session."

It is said that a person cannot take upon himself incompatible duties and characters at the same time, or become agent in a transaction in which he has an adverse interest or employment. [McGehee v. Lindsay, 6 Ala. Rep. 16.; Story on Ag. 11, 199, 200] So, in general an agent cannot delegate his authority unless the power of substitution is conferred in express terms. [Id. 14, 15, 16, 17, 39.] Agents can only be appointed in the manner prescribed by the statute where it speaks upon the subject; and the directors of a corporation specially empowered by the charter to contract on its behalf, have no power to appoint sub-agents to contract for the corporation, unless such power is expressly given to them. [Ang. & A. on Corpo. 210, 212, 242.] Nor can the directors who are vested with the power of discounting notes and bills, delegate this trust to an agent or agents of the board. [Id. 211; 3 Louisiana Rep. 568; 6 Paige Rep. 497; 12 Mass. Rep. 237.]

JUNE TERM, 1844. 103

The Branch of the Bank of the State of Alabama at Mobile v. Collins.

The directors of our State Banks are not individually corporators, as has been already shown, and they are not even officially designated in the style of the corporations; the plaintiff is called " The Branch of the Bank of the State of Alabama at Mobile.". They are, appropriately speaking, agents of the State, with powers limited by the charter, either expressly or by legal construction. In the language of the act, they are elected " for the management of the concerns of said Branch Bank." As such agents, it is the duty of the directors to exercise a supervision over and to manage as far as necessary, not only the funds and debts due the Bank, but the real estate also. If the performance of this duty makes it necessary to appoint officers extraordinary, the third section of the charter confers the power for that purpose, and authorizes such compensation to be given " as shall be reasonable and just." When then the official machinery of the Bank is insufficient for the management of its interests, should not the directory appoint " other officers and clerks?" Can they devolve upon their own board or some of them, what they may consider *extra duties* and services, and allow additional compensation therefor ? Would not such an arrangement be opposed to public policy, as it would withdraw the directors from their appropriate duties, and tempt to prodigality in expending the funds of the Bank, with a view to their own benefit ? It is not necessary to answer these questions in the present case, as the conclusion attained, may be supported upon other grounds, quite as conclusive.

The act of 1839, we have seen fixes the salary of the directors at seven dollars *per diem*, for each day they may be engaged in the discharge of their duties as such; and it is not competent for the directory, in despite of the declared will of the Legislature, to make a further appropriation for their *official services*, from the funds committed to their management. In the case before us, it does not appear that the supervision, &c., of the real estate of the corporation, was made an office by the board, or that it was in any manner detached from the ordinary functions of the directors; but it is expressly stated that the " Real Estate Committee," was appointed by the board, and of course the members of that committee were as such directors. So far then, as it respects the one thousand dollars paid for service on this committee, the case when denuded, is this—the

Legislature elected the defendant one of the directors of the plaintiff, having first prescribed his *per diem* compensation, and *in addition to his daily allowance*, the board pay him as one of its members the sum of one thousand dollars, for about ten months—that being the time he was in office. Money thus paid without the authority of law, or any consideration recognized as legal, cannot be retained. The right to recover at the suit of the plaintiff, (the funds of which have been diminished by the payment to the defendant,) is clearly maintainable, both upon reason and authority.