## GODBOLD v. THE BRANCH BANK AT MOBILE.

1. Directors of a bank are not responsible for an injury to the bank, caused by their act, originating in an error of judgment, unless the act be so grossly wrong as to warrant the imputation of fraud, or the want of the necessary knowledge for the performance of the duty assumed by them, on accepting the agency.

2. The giving compensation to a member of the board of directors, for *extra* services as an agent of the bank, though unlawful, is not such an act as will expose the directory to liability, if done in good faith, and with the honest intent of benefitting the bank.

Error to the Circuit Court of Baldwin.

Godbold v. The Branch Bank at Mobile.

ACTION on the case by the defendant against the plaintiff in error.

The declaration contains two counts—

1. After the formal part, "For that whereas, heretofore, to wit, &c. on, &c., the said plaintiff, was lawfully possessed of a large amount of funds, and effects, consisting of gold and silver coin, bank bills, &c., of great value, to wit, of the value of $2,000,000, as, and for, the capital stock of said plaintiff, as a body corporate, duly created. And on the day and year aforesaid, the said defendant, with others, was duly elected, and employed, for a certain reasonable reward, as directors of the said Branch Bank, for the space of one year, then next ensuing, and the said defendant, together with the other persons thus elected, then and there accepted, and entered upon the said employment, and office of directors as aforesaid, and assumed upon themselves the duties thereto pertaining, and continued and acted as such, until the time of the committing the grievances hereinafter mentioned, to wit, at Mobile, in the county aforesaid; and thereupon it became, and was the duty of the defendant, with others, and respectively as such directors, to take, and use, all proper care and diligence in and about the preservation, custody, continued disbursement and safe keeping of the said funds, credits and effects of the said plaintiff, and to use, keep, and continue the same, in such manner only, as is expressly provided for, and set forth in its charter, and several statutes creating and regulating the said plaintiff, as such body corporate and politic. And by virtue of a certain statute of the State of Alabama, then in force, it was the duty of the said board of directors, or a majority of them, to pay out of the said funds, credits and effects, to each of the directors of the said Branch Bank, $1,000 *per annum*, for their services as such directors, during the year 1842. Yet the said defendant, together with others, being a majority of said board of directors elected as aforesaid, jointly with the others, and severally, totally disregarding his said duty, and contriving, and fraudulently intending, to injure the said plaintiff, whilst he, the said defendant, jointly with the others, and severally was and acted as such directors aforesaid, and was with the others,

Godbold v. The Branch Bank at Mobile.

who then acted with him, a majority of the said board of directors, and had the care, custody and control of said funds, credits and effects, to wit, at Mobile, in the county of Baldwin, squandered, and illegally paid out, from said funds, to one William E. Starke, who at that time was one of the directors of said bank, and claimed and received his lawful *per diem* as aforesaid, the sum of $500.   By means of the premises, and by and through the careless, negligent, and improper conduct of the said defendant, as such director, as aforesaid, the said funds of the said plaintiff were greatly impaired, wasted, and dissipated, and the said $500, a portion thereof, finally lost to the said plaintiff, to wit, &c.

2.  And whereas, also, the said defendant, to wit, at Mobile in the county of Baldwin, was with the others, duly elected and employed for a reasonable reward, as directors of the plaintiff, as a body corporate and politic, and on the day and year aforesaid, assumed and took upon himself, jointly with the others, and respectively to perform the duties thereof, and thereupon became, and was bound to preserve, and take care of, and properly account for, the funds, credits and effects of the said plaintiff, of great value, to wit, of the value of $2,-000,000, and which, by virtue of his said office, and employment, were entrusted to his joint, and several care, and control; yet the said defendant, jointly with the others, and severally, totally disregarding his said duties, and obligations, and contriving, and fraudulently intending, to injure the plaintiff, while he, the said defendant, jointly with the others and severally was, and acted as such director as aforesaid, and contrived with those who acted with him, a majority of said board of directors, and had the care, custody and control of the said funds, and of the said plaintiff, to wit, on the day and year, &c. took so little and bad care in and about the preservation, safe-keeping, and proper disbursement of said funds, &c. of said plaintiff, that by and through the gross negligence, and illegal and improper conduct of the said defendant as such director, and as one of the majority of said board as aforesaid, paying out to one William E. Starke, the sum of $500, to which he was not entitled, and said funds *quoad hoc*, were wasted, impaired, and finally lost to the plaintiff, to wit, &c.

25

The defendant demurred generally to the declaration, which was overruled by the court, and he pleaded not guilty.

Upon the trial, as appears from a bill of exceptions, the plaintiff proved, that the defendant was a director of the bank for the year 1842, and that during the same year Wm. E. Starke was also director, and received $1000 as his compensation as such, as provided by the statute. That the defendant, as one of the directors, and voting with the majority of the board, employed the said Starke as the agent of the board, to visit the different counties in Alabama, and the State of Mississippi, to collect monies, and look after, and attend to the business of the bank, and that the defendant as a director during the year 1842, voted that the said Starke receive as a compensation for his said services, the sum of $500, over and above his salary, which was paid to him by the cashier.

On the part of the defendant, it was proved, that the inducement which moved the board, and the defendant, to employ the said Starke, in preference to one not connected with the bank, was his capacity for transacting such business, and the superior obligation he would be under by his oath, to attend to the business faithfully. It was farther proved, that he was employed a considerable time, and that his services were valuable to the bank.

The court charged the jury, that if they believed the evidence, they ought to find for the plaintiff, and that the measure of damages was the amount so received by Starke.

The defendant moved the court to charge—

1. That unless the defendant, in the act complained of, intended to defraud the plaintiff, or benefit himself, they should find for the defendant.

2. That if the contract with Starke was made in good faith, and for the purpose of benefitting the bank, the plaintiff could not recover.

3. That the action cannot be maintained, if the defendant acted in his corporate official character, though the plaintiff was injured thereby.

4. That if the services of Starke were of value to the

plaintiff, equal to the sum of five hundred dollars, it could not recover. These were refused.

The assignments of error present all these questions.

A. F. HOPKINS, for plaintiff in error. The first count contains no cause of action against the defendant alone, because the act complained of, is shown by the declaration to have been done by a majority of the directors, of whom the defendant was but one. The cause of action therefore, if any there be, is against all who composed the majority. The charter conferred no power, and imposed no duty upon the defendant as an individual, but the powers and duties were conferred jointly. No individual director is responsible, unless the money went into his possession. [3 Wend. 130; 1 Ch. P. 79; 2 Johns. 365.]

If two or more persons participate in the commission of a *tort*, the injured person may sue one separately, or any number jointly, because each person is capable of willing the injury, and of doing or causing it to be done. The authority to employ the agent, was vested in the majority, which consists of the equal portion of power, which each member of the majority has. The act is not the result of the capacity of one director. The act cannot be divided into parts, and one part, and its consequences, assigned to one director. Whether the act be legal or illegal, it is clearly the act of the majority, they should therefore have been sued jointly.

The cause of action, if any, belonged to the State of Alabama, and not to the bank. This question was not considered in the Bank v. Collins, 7 Ala. Rep. 95, and therefore not concluded by it. Besides the cases are entirely dissimilar. That was for money of the bank improperly received by a director, this is for a malfeasance in office, and no power has ever been given to the directors to sue their predecessors in office for a breach of duty.

PHILLIPS, contra. Non-joinder of defendants in *tort*, can only be taken advantage of by plea in abatement. Misjoinder may be by demurrer. [1 Chitty P. 77.] One defendant in trespass, may be sued alone, and even if it appears from the declaration, or other pleading, that the *tort* was commit-

ted jointly by the defendant, and another person, no objection can be taken.    [1 Chitty P. 78; 2 Johns. R. 365.]

The case cited from 3 Wend. 134, shows conclusively, that if any one or more of the directors improperly obtained, and disposed of funds, the property of the company, they are responsible as individuals, and not jointly as directors.    The declaration in this case, is precisely similar to that in the case referred to.

A person is liable as a tresspasser, though not benefitted by the act.    [1 B. & P. 369; 1 Camp. 187.]

The Bank, and not the State, is the proper party.    The constitutionality of the Bank is supported on this ground. [3 Ala. R. 271.

It is a matter of no moment that the act was beneficial to the Bank.    It had already purchased the services of the agent as a director, and the act was unlawful.


ORMOND, J.—This action is against the defendant, as one of the majority of the board of directors of the Branch Bank of Mobile, by whose act a sum of money was appropriated to compensate another director, as an agent of the bank.

In the Branch Bank at Mobile v. Collins, 7 Ala. 95, this was held to be illegal, and that the money so unlawfully received could be recovered from the director receiving it, by action of assumpsit.    This action is against an individual director, who by voting with the majority participated in the unlawful act, but did not receive the money.

The act incorporating this, as well as the rest of our banks, placed it under the control of a president and directory. The second section of the charter declared, that "for the management of the concerns of said bank, the legislature shall annually proceed to elect by joint vote of both houses, a president, and fourteen directors, whose office shall continue for one year," &c.    The power here conferred on the directory, is to those composing it collectively, and not as individuals, and like all other grants of power to a body of men acting in a corporate, political, or judicial capacity, is to be exercised by the majority, unless the act creating the body otherwise limits, or declares the mode in which it shall act,

or manifest its determinations. The only limitation in the charter of this bank is, "that not less than six of the directors shall constitute a board for the transaction of business, of whom the president shall always be one;" and as it does not require that each member of the board shall concur in the performance of any act, it follows necessarily that the act may be done by a majority of the board present. This, however, is not left to inference, as the act requires the board to keep a minute of its proceedings, and authorizes any member to require the yeas and nays to be recorded.

That it is not the vote which any director may cast, which constitutes an act for which he might be afterwards held responsible, is evident from the fact, that it requires a majority to do any act as a board of directors, and that it is only as one of the majority, that a director can participate in the action of the board. He has no capacity to act as a director, but as an integral part of the board, and the act when done, is not the act of each member individually, but is the result of the joint action of the majority collectively. A vote given by a member in the minority, has clearly no influence upon the action of the board, yet until the result of the ballot or vote is ascertained, his voice is as potent, as one which the result ascertained to have been in the majority. It follows necessarily, that an act done by the board, is not the act of the individual members who by voting in the majority have produced the result, but the act is the consequence of the joint action of those directors, who by their vote have carried the proposed measure.

The case of the Franklin In. Co. v. Jenkins, 3 Wend. 130, is the converse of this. There, four persons were sued as directors, for a waste of the funds of the company, and the court held, that as they did not constitute a majority of the board, they were incapable of doing any corporate act, and could not therefore jointly, as directors, have wasted the money or effects of the corporation, but if liable at all, were liable individually. That is the precise principle involved in this case. In both counts of the declaration, the act complained of, is charged to have been done by the defendant in his capacity of director, acting with, and constituting one of the majority of the board, by which the act was done; it

was an act, therefore, which from its very nature, as well as from the express allegation of the declaration, was not an act done by him as an individual, but the act of the board. Doubtless each of the individuals, comprising the directory, by an improper interference with the property of the bank, would be responsible to it for the injury thereby sustained. But that is not the charge. He is charged not with his own act, but with the act of the majority of the board, and in my opinion, no action can be maintained against any individual composing that majority, but that if liable at all, they are jointly liable.

It is further urged, that conceding all the directors composing the majority should have been sued, advantage can only be taken of the omission by plea in abatement. The rule that although several are concerned in the commission of a *tort*, they may be sued either jointly or severally, proceeds from the nature of the act, which in general is such, that each, or all may have committed it. If it is of such a nature that it cannot be joint, as in verbal slander, although many may repeat the same words, the action must be several, (1 Ch. P. 77); and for the same reason, it would seem necessarily to follow, that if there can be a *tort*, which one cannot commit, but in connection with others, that the action must be joint, and could not be several.

But can this be considered a *tort*, in the proper sense of the term. It manifestly wants the ordinary ingredients which constitute it. Here was no violence, or any act denoting intentional wrong. It was an act done *colore officii*, and does not *per se* denote an intention to waste or misapply the funds of the bank; and although an unauthorized act, and for the consequences of which the actors in it may be responsible to the bank, it may nevertheless have been done in good faith, and from a belief that it was authorized by the authority reposed in them as directors. It seems to belong to that class of injuries "for which the law has made no provision, or rather where no general action could well be devised before-hand," and which may therefore be redressed by a special action on the case. [1 Bac. Ab. 72.]

There was no necessity to plead the non-joinder of the other directors, because the plaintiff by his own statement of

his case, shows that he has no cause of action against the defendant individually; a demurrer therefore to the declaration was the proper mode of making the objection.

Proceeding to the consideration of the merits of the case, a majority of the court is of the opinion, that the court below erred in the charge given to the jury, as well as in some of those which it refused.

The power conferred on the directory was a trust of the greatest delicacy, and of the highest importance, in the exercise of which, the utmost good faith on their part was necessary. The undertaking implies a competent knowledge of the duties of the agency assumed by them, as well as a pledge that they will diligently supervise, watch over, and protect the interests of the institution committed to their care. They do not in our judgment undertake, that they possess such a perfect knowledge of the matters and subjects which may come under their cognizance, that they cannot err, or be mistaken, either in the wisdom or legality of the means employed by them. To exact such extreme accuracy of knowledge from this or any other class of agents, to whom of necessity a large discretion in the choice of means must be entrusted, would be manifestly wrong, as it must frequently happen, that after the utmost circumspection and caution, the best possible course would not be pursued, and a loss be sustained, which as the event would show, might have been avoided. The inevitable tendency of such a rule, would be hostile to the end proposed by it, as no man of ordinary prudence would accept a trust surrounded by such perils.

There may doubtless be instances of such gross error, in the conduct of an agent, invested even with great discretionary powers, as to expose him, either to the imputation of such ignorance as is incompatible with the exercise of the duties he has undertaken, or to justify the imputation of fraud.

To apply these general principles to this case. That the directory did not know it was unlawful to employ one of their number as an agent of the bank, and give him a compensation in addition to his salary as a director, for the performance of extraordinary services, is no impeachment of their knowledge as mercantile men; nor does it by any

means demonstrate the want of that skill which would be necessary to qualify them for the station they filled. Indeed, it merely proves they were not skillful lawyers, as well as merchants, and although the act was not lawful, and the director receiving such additional compensation may be compelled to refund it, it is not, if done in good faith, and with the honest purpose to collect and preserve the assets of the bank, an act which would expose the directory to a personal responsibility.

The principles here advanced are sustained by the decision of the Supreme Court of Louisiana, in the case of Percy v. Millaudon, 8 Martin's Lou. R. 68, N. S. That was a suit by the stockholders of a bank, against a portion of the directory, charging them with unfaithful conduct in that capacity. The opinion of the court, which is a very able one, places the question we have been considering, upon the same ground taken in this opinion; and holds, that bank directors are not responsible for errors of judgment, unless the error be of the grossest kind. Among other charges against the directors, was the making allowances to the cashier and attorney of the bank, beyond their salaries. Upon this particular specification, the court say, "as to the charge of voting sums to the officers of the bank, in addition to their salary, we do not see any thing which may not be reconciled to a wish to reward zeal and merit, or what they consider such, *in the* service of the institution."

The decision in Harman v. Tappenden, and others, 1 East, 535, also sustains the views here taken. That was an action by one corporator, against the other members of the corporation, for disfranchising him, and thereby cutting him off from the benefit of a fishery, which by custom as one of the corporators, he was entitled to. Lawrence, Justice, said, "there is no instance of an action of this sort, maintained for an act, arising merely from error of judgment. Perhaps the action might have been maintained, if it had been proved, that the defendant's contriving, and intending to injure and prejudice the plaintiff, and to deprive him of the benefits of his profits from the fishery, which as a member of this body he was entitled to from the custom, had wilfully and mali-

ciously procured him to be disfranchised, in consequence of which he was deprived of such profits," &c.

This appears to us to be fully in point in principle. For if persons acting in a corporate capacity, are not responsible to another corporator, for a wrong done to him, in violation of law, unless done from malicious motives, certainly an agent of a corporation, ought not to be responsible to it, for an act which though unlawful, was done in good faith, and in the exercise of the power vested in him.

In such cases the *quo animo* is the *gist* of the matter, and an act is actionable, or otherwise, according to the intent with which it was done. In this particular case, there would be great injustice in holding these directors liable for a mistake of law, committed in the honest exercise of their duties. In the language of the case cited from 8 Martin, 68, *supra*, "it would require from them, knowledge and learning, which the law only presumes in those who have made the jurisprudence of their country the study of their lives, and which knowledge often fails them, from the intrinsic difficulty of the subject, and the fallibility of human judgment."

Our opinion therefore is, that the directors are not responsible individually, for the act complained of, if in the appointment of the agent, they acted in good faith, and with a view to the promotion of the interest of the bank.

Let the judgment be reversed, and the cause remanded.

COLLIER, C. J.—I concur with my brother ORMOND upon the last point examined by him. In respect to the question whether the directors of the bank were severally suable, I have not considered it; and consequently express no opinion upon it.

GOLDTHWAITE, J., *dissenting*.—My judgment leads to a different conclusion from that expressed as the opinion of a majority of the court upon the point decided; and also to a different opinion from that of Judge ORMOND with respect to the joinder of all the directors composing the majority in the action.

Godbold v. The Branch Bank at Mobile.

On both points, I find expressions elsewhere used which convey my impressions with sufficient brevity and precision. "If several are jointly bound to perform a duty, they are liable jointly and severally for the failure or refusal; and if it is a duty which a majority of the number is bound to perform, those who by their refusal prevent the concurrence of a majority, are answerable to the party injured; that is, all those who constitute a majority—such majority committing the *non feasance*—violate the duty imposed, disobey the law, occasion the injury, and are accountable for it." [Ferguson v. Kennoull, Clarke & F. Parl. Ca. 289.]   This is given as the law applicable to the members of a collective body who by law are required to perform a particular duty, and, as it seems to me, is not less clearly the law when the majority of a collective body does an illegal act.   I entirely concur, that when a discretion is allowed, the party cannot be liable, no matter how injudiciously it may be exercised.   But if one class of illegal acts is to be excused on the reason that the illegality was a question of difficult solution, and upon which individuals might differ, it is not easy for me to see why the same reason should not cover all other illegal acts which are committed under a mistaken impression.   I am not aware of any exception to the rule, that *an illegal act accompanied with injury* may be redressed by action.

My impression is, the cases cited from Louisiana, and considered by the majority of the court as in accordance with their opinion, does not sustain the position assumed.   I infer the salaries of the officers of that bank, as they are in most other private banks, were under the control of the direction, and not as here, regulated by a special enactment; if so, the difference between that case and this is apparent.   If the fact be otherwise, I am constrained to doubt the correctness of that decision.

I might extend this opinion, by citing other decisions to sustain my views; but all those made in the courts of England on this branch of the science, are collected in the case I have quoted.