4L 385
9L 744

GEO T. VANCE v. PHŒNIX INSURANCE COMPANY et als.

1. CORPORATIONS. *Directors.* Directors of a corporation are re-
   quired to show reasonable capacity for the position, scrupulous
   good faith, and the exercise of their best judgment.

2. SAME. *Same. Not personally liable, when.* Directors, who act in
   good faith, and with reasonable care and diligence, but never-
   theless fall into a mistake, either of law or fact, are not per-
   sonally liable for the consequences of such mistake.

3. SAME. *Same. Same.* The by-laws of a corporation provided
   that the Board of Directors should elect a Secretary, whose
   term of office should be twelve months, or until his successor
   was elected, and who was to give bond with security for the
   faithful discharge of his duties. The Board elected a Secretary,
   and took the prescribed bond, and re-elected the same person
   Secretary for each of the two following years, but took no new
   bond, supposing, after consideration and discussion of the ques-
   tion, but without taking legal advice, that the bond taken was
   a continuing security during those years. The Secretary be-
   came a defaulter in the third year. *Held :* That the Directors,
   who were good and efficient business men, stockholders of the
   coporation, and acting in good faith, were not liable to make
   good the loss.

FROM SHELBY.

Appeal from the Chancery Court at Memphis.
R. J. MORGAN, Ch.

HUMES & POSTON and U. W. MILLER, for Com-
plainant.

J. M. GREGORY for Defendants.

25—VOL. 4.

COOPER, J., delivered the opinion of the Court.

Bill by one stockholder of the Phœnix Insurance Company, upon the refusal of the company to bring the suit, to hold the directors of the company during the years 1872–73 individually liable for losses occasioned by their neglect to take an official bond from the Secretary of the company, in accordance with the by-laws of the corporation.

The Chancellor, on final hearing, dismissed the bill, and the complainant appealed.

By the charter of the Phœnix Insurance Company, section 31, the Board of Directors are authorized to appoint a Secretary and Treasurer, or such other officers for the management of the business of the company as may be deemed necessary by said Board of Directors, and to take from such Secretary and Treasurer, or other officers, such bonds and securities as may be prescribed by said Board of Directors.

The company organized in February, 1871, and adopted by-laws. The third by-law is: "At the first regular meeting after the election of Directors, the newly elected Board shall elect a President, Secretary and Assistant Secretary, whose term of office shall be for twelve months, or until their successors are elected."

The tenth by-law is: "The Secretary, after his election, shall give bond with satisfactory security to the Board of Directors, in the sum of thirty thousand dollars, conditioned for the faithful dis-

charge of his duties, and a failure to give such bond shall cause a forfeiture of his office."

Other by-laws give the Secretary "special care and control over all books, papers and other documents" of the company; direct him to make regular deposits in bank of the money of the company, and authorize the money to be drawn out only on his check.

In February, 1871, the Board of Directors appointed B. F. White Secretary of the company, and took from him a bond, with satisfactory security, in the penalty of thirty thousand dollars, conditioned to faithfully perform his duty as such Secretary, and in all respects properly demean himself in his said office. White was re-elected Secretary in February, 1872, and again in February, 1873, but gave no new bond on either occasion, nor did the Board require him to renew his bond. In 1873, White became a defaulter in the sum of $11,328.35, and also issued stock without authority, which the Board of Directors redeemed at an expense of $3,050.

The individual defendants were stockholders and members of the Board of Directors during the years 1872-73. They received no compensation as Directors, and gave to the business of the company their personal attention, and such attention, it is agreed, as men of ordinary prudence give their own affairs. "They were all," the agreed statement of facts says, "good and efficient busi-

ness men, several of them heads of large mercantile and manufacturing establishments."

The defendants supposed that the bond taken from White in 1871 was security for White's acts in 1872 and 1873, and so long as he acted as Secretary of the company. They considered and discussed the question of White's bond, and their conclusion was that it covered his acts for the whole time he should serve the company. In 1872 and 1873 they gave the business of said insurance company, and the sufficiency of White's bond, that care and attention which prudent men give their own affairs. They did not, however, take advice of counsel as to the sufficiency of the bond, or of its binding force, but acted on their own judgment in regard to it, until after White's defalcation occurred.

Directors of a corporation undoubtedly occupy a fiduciary relation towards the stockholders, and are bound to good faith and reasonable diligence in the performance of their duties. They are, consequently, liable for losses occasioned by their positive misconduct, or neglect which warrants the imputation of fraud, or, as it is sometimes vaguely expressed, shows a want of the knowledge necessary for the discharge of their functions so great that they were not justified in assuming the office. Where they are interested in the stock of the company, and act without compensation, they will, at the utmost, be held to answer for ordinary neglect, that is, for the omission of

that care which every man of ordinary prudence gives to his own affairs. They do not undertake to be infallible. For error, therefore, though it be in a matter of law, they are not, in general liable. In fine, they are required to show only a reasonable capacity for the position, scrupulous good faith, and the exercise of their best judgment. These principles are recognized in our decisions: *Shea* v. *Knoxville & Kentucky Railroad Co.*, 6 Bax., 277, 283; *Shea* v. *Mabry*, 1 Lea, 319, 343. In this last case, it is conceded that Directors who act in good faith, and with reasonable care and diligence, but nevertheless fall into a mistake, either as to law or fact, are not liable for the consequences of such mistake. To the same effect are the authorities elsewhere: *Turquand* v. *Marshall*, L. R., 4 Ch. App. 386; *Godbold* v. *Branch Bank*, 11 Ala., 191; *Spering's Appeal*, 71 Penn. Stat., 11; *Scott* v. *Depeyster*, 1 Edw. Ch., 513; *Hodges* v. *New England Screw Co.*, 1 R. I., 312; S. C., 3 R. I., 9.

The act complained of in this case was the failure to take from the Secretary a new bond upon his re-election in 1872, and again in 1873, upon the supposition that the bond given in 1871 did not bind the sureties beyond the re-election at the end of the first twelve months. It has been held that the failure to require the Secretary of a corporation to give a bond would make the President, whose duty it was to take the bond, liable for the defalcations of the Secretary: *Pontchartrain Railroad Co.* v. *Paulding*, 11 La. Rep., 41. If this

be conceded to be good law, as perhaps it may, it would not necessarily fix liability on the defendants in the present case, for the by-law only requires the Secretary to give a bond for the faithful discharge of his duties, and such a bond was taken. The neglect of duty was in not requiring a new bond on each re-election of the same person. If the by-law had plainly required a new bond each year, or if—the language of the by-law admitting of the doubt—the directors had come to the conclusion that a new bond should be taken, the authority would have been in point. So, too, if the Directors had known that, as matter of law, the sureties would not be bound beyond the year, and yet neglected to require a new bond. The by-law does not, however, plainly require a new bond each year, and the agreed statement of facts concedes that the defendants " considered and discussed" the question of the bond, and reached the conclusion that the bond taken "covered his acts for the whole term he should serve the company."

It was, at most, a mistake of law, or error of judgment, for which, without more, they would not be liable.

There is, of course, no pretense for charging the defendants upon the ground of a want of knowledge necessary to discharge their functions so great that they were not justified in assuming the office, for it is conceded that they were "good and efficient business men, several of them the

heads of large mercantile and manufacturing establishments." Nor can they be charged with neglect of duty, it being agreed that they gave to the business of the company and the matter of the Secretary's bond "that care and attention which prudent men give their own affairs." It is not pretended that there was any bad faith.

There is, therefore, clearly no ground for holding the defendants liable, unless it be for failing to take legal advice. But the very fact that a mistake of law will not, of itself, create liability, necessarily implies that such a mistake may be committed without legal advice. Some of the cases do hold that acting under legal advice may tend to protect against liability, while none of them decide that its absence ensures liability. Ordinarily, the advice of counsel will not protect a trustee: Perry on Trusts, sec. 927. Nor shield any person from the consequences of a wrongful or illegal act: *Kendrick* v. *Cypert*, 10 Hum., 291. The true rule in this class of cases is, that if the Directors feel any doubts as to the law, they may be guilty of neglect if they fail to seek and be guided by competent legal advice, and *this* for the obvious reason that they would, under like circumstances, seek such advice in the management of their private affairs.

Affirm the Chancellor's decree, with costs.