## GILBERT BREWSTER *versus* THOMAS HOBART *et al*

Assumpsit on a contract, in writing, by which the defendants, "for value received, promised to pay the plaintiff or his order $206·50, to be paid in iron castings, subject to the order of the plaintiff, by his furnishing the models and delivering the patterns at the furnace of the defendants and by giving them reasonable notice when the furnace was in blast." The first count in the declaration set forth the contract in terms, and averred that the plaintiff furnished the models, in pursuance of the contract, and demanded the castings, but that the defendants refused to deliver them; and in the second count the contract was declared on as a promissory note payable on demand. The defendant pleaded, *non assumpsit infra sex annos.* On demurrer, it was *held,* that the plea was bad as respected the first count, and that it should have been, *actio non accrevit infra sex annos ;* that being bad as to that count, and being entire, and pleaded to the whole declaration, it was altogether bad ; and that even if the first count were defective, the plaintiff might recover judgment on the second count.

In assumpsit on a promissory note for $206·50, payable in iron castings, which was signed in the names of the defendants by B. W. P., it appeared, that B. W. P. was in the employment of the defendants, who were engaged in the manufacturing of iron ; that he was ordered by S. A., the general agent of the defendants, to ascertain how much had been paid on a previous note to the plaintiffs, which was payable in iron castings, and give a new note in the same terms for the balance ; that B. W. P. accordingly ascertained as well as he could, what remained unpaid, and then gave the note in suit for the balance, and took from the plaintiff the original note, and also a receipt, which stated, that the new note, when paid, should be in full of all demands ; that B. W. P. delivered these papers to S. A., who said the words " when paid " in the receipt, should have been left out, but made no other objection to the transaction and put the papers on file. It was *held,* that S. A. could not legally delegate authority to B. W. P. to bind the defend

ants by a note executed by him in their name under these circumstances ; and therefore that they were not liable upon the note.

THIS was assumpsit on the following contract. " Halifax, September 7, 1826. For value received, we promise to pay Gilbert Brewster or his order two hundred and six dollars and fifty cents, to be paid in iron castings, subject to the order of said Brewster by his furnishing the models and delivering the said patterns at our furnace in Halifax, and by giving us reasonable notice, when our furnace is in blast, at five and a half cents per pound, to be delivered in Boston on Long Wharf; the said castings to be done in workmanlike manner, the iron of a good quality. Hobart, Mitchell & Co. per B. Willis Pratt." The declaration contained three counts. The first count set forth the contract in terms, and averred that, on August 23, 1832, the plaintiff furnished the models and patterns, the furnace being then in blast, and demanded the castings, and that the defendants refused to deliver the same In the second count the contract was declared on as a promissory note for $206·50, payable on demand. The third count was for $300, money had and received.

The writ was dated September 6, 1832, on which day it was served on Prichard and Parks, two of the defendants ; and on September 17, 1832, it was served on the other defendants.

The defendants pleaded, 1. The general issue ; 2. *Non assumpsit infra sex annos* ; 3. *Actio non accrevit infra sex annos.*

Issue was joined on the first and third pleas ; and to the second, there was a demurrer.

At the trial, before *Morton* J., it appeared that on July 9, 1819, a contract was entered into by the plaintiff and the firm of Hobart, Mitchell & Co., by which it was agreed that the plaintiff should furnish that firm with one of his patent wool-spinning machines, to be put up by him ; and that, when the machine should be set up and should operate to their satisfaction, they should pay him the sum of $1440, in cast iron, according to the patterns to be furnished by the plaintiff. In pursuance of this contract, the plaintiff received a writing signed by the firm, dated October 2, 1819, whereby

Brewster
*v.*
Hobart.
they promised to pay the plaintiff the sum of $1440, on the same terms as are contained in the contract which is the subject of this action. On the writing dated October 2, 1819, was indorsed a receipt for $100, dated January 8, 1820.

The plaintiff produced Pratt, who testified, that in 1826, when the writing declared on was executed, Seth Allen was the general agent of the firm of Hobart, Mitchell & Co. ; that Allen had been a member of the firm until the latter part of 1821, but was not so in 1826; that the witness was in the employment of the firm ; that he was ordered by Allen to go to one Leach in Easton, with a son of the plaintiff, and ascertain the amount of the acceptances of orders, which had been given and paid towards the writing dated October 2, 1819, which the plaintiff's son had with him, and to deduct the amount thereof and give a new note or writing in the same terms for the balance ; that the witness accordingly took what he could find on the books of the firm, went to Easton, and ascertained, as well as he could, from one Drake, a clerk of Leach, who was then absent and had the orders in his trunk in Boston, what remained unpaid upon the note dated October 2, 1819 ; that he gave the writing declared on, for the balance , that he took from the plaintiff's son the writing dated October 2, 1819, and also a receipt for the writing declared on, which stated, that when paid, such writing should be in full of all demands ; that he brought back and delivered these papers to Allen, who objected to the words " when paid " in the receipt, and said they should have been left out, but made no other objection to the transaction, and put the papers on file ; that the witness received no authority in this matter except from Allen, and did not know that any of the firm had any knowledge of the writing in suit or of the receipt.

The plaintiff then offered to read in evidence the writing in suit, to which the defendants objected, because it was not signed by them, nor by any one legally authorized by them, and because it was a promise to pay the debt of others than the defendants, and was without consideration ; but these objections were overruled, and the points being reserved for the consideration of the whole Court, the writing was admitted in evidence.

The defendants produced Allen, who testified that he was a member of the firm of Hobart, Mitchell & Co. in 1817 or 1818, but that he sold out his interest in 1821, and that Forbes, another member, sold out in 1819 or 1820 ; and that while the witness was agent, Parks, one of the defendants, attended meetings of the firm ; that the firm were not satisfied with the operation of the machine in question, and that no reasonable man would have been satisfied with it ; that he had no authority from the firm to pay more than the amount of the acceptances ; that the acceptances, or most of them, were made before the machine was fully tried ; and that none of them, to the knowledge of the witness, were made after it had been ascertained that it would not operate to their satisfaction ; that the firm had come to the resolution to pay no more ; that the witness did not send back the old note, because he did not know where to send it, and should not have sent it back till adjusted, if he had known ; that the witness obtained the orders and they were put on file.

The jury were instructed, that Allen being the general agent of the defendants, he was authorized to execute such a contract as that in suit, and that he might do it by sending the clerk, Pratt, to execute it in the way that he had done in this case ; that if Allen acted in this instance contrary to the secret instructions given to him, not to make any such contract, still, if he was the general agent and gave Pratt orders to do it and Pratt pursued those orders, the defendants would be bound in the same manner as if they had executed the contract themselves. To these rulings and instructions the defendants excepted.

The jury returned a verdict for the plaintiff, upon both issues.

The defendants moved for a new trial for the following, among other reasons :

1. Because the contract declared on was admitted in evidence.

2. Because the instructions to the jury were erroneous.

The defendants also moved in arrest of judgment, because the verdict was general on all the counts, and no consideration

26 *

Brewster
v.
Hobart.

March 15th.

June 19th.

was alleged for the undertaking of the defendants set forth in the first count.

*Rand* and *Fiske*, for the defendants, cited as to the right of Allen to delegate authority to Pratt, to sign the note in suit, Chitty on Bills, 36 ; *Blore* v. *Sutton*, 3 Meriv. 237 , *Emerson* v. *Providence Hat Manuf. Co.* 12 Mass. R. 242 ; *Terry* v. *Fargo*, 10 Johns. R. 114 ; Thompson on Bills, 246 ; *Coles* v. *Trecothick*, 9 Ves. 236, 251 ; Paley on Principal and Agent, 128.

*C. P. Curtis*, for the plaintiff, to the point, that the second plea, being bad as respected the first count, and being entire, and pleaded to the whole declaration, was altogether bad, cited Lawes on Pl. in Assumpsit, 733, 734 ; *Perkins* v. *Burbank*, 2 Mass. R. 81 ; 1 Chit. Pl. (6th Am. ed.) 579 ; and to the point that the plaintiff was therefore entitled to judgment on his good counts, if the first count was defective, *Payson* v. *Whitcomb, ante,* 212.

WILDE J. delivered the opinion of the Court. As to the question arising on the demurrer, it seems very clear that the plea is not a good and sufficient answer to the first count. In that count the plaintiff declares on a promise to pay in iron castings on demand, the plaintiff furnishing the models and delivering the patterns ; until such demand there was no cause of action on the promise ; so that the time of the promise, being immaterial, should not be put in issue, as it is by this plea. The third plea is the proper and appropriate answer to this count.

The defendants' counsel, however, have argued that the first count is insufficient, and therefore that the first fault is on the part of the plaintiff.

Without deciding whether this objection to the declaration be valid or not, it is sufficient to say, that the plea being entire, and pleaded to the whole declaration, and being bad as to one count, is so altogether. It follows, that the plaintiff is entitled to judgment on his good counts. The defendants cannot obtain any advantage by a bad plea, nor rest on better ground than they would have rested on, upon a general demurrer to the whole declaration. Lawes on Pl. in Assumpsit,

733 ; *Shutford* v. *Penow*, Cro. Car. 138 ; *Shutford* v. *Borough*, Godb. 437 ; *Webb* v. *Martin*, 1 Lev. 48. ·

The remaining questions arise out of the facts which were proved at the trial, and are reported by the judge ; the principal of which is, whether the note or agreement declared on, was signed by the defendants' agent, legally authorized to bind them. It appears that Pratt had no authority in this matter, except by the oiders from Allen. The question is, whether Allen, as the defendants' general agent, could legally delegate his authority to Pratt, so as to authorize him te bind the defendants by a note signed by him in their name. The general principle is, that a delegated authority can be executed only by the person to whom it is given, for the confidence being personal, cannot be assigned to a stranger.

" If, therefore," says Paley, p. 128, " an agent be appointed to sell, he cannot depute the power to a clerk or under-agent, notwithstanding any usage of trade, unless by express assent of the principal." If, however, the principal is informed of the usage and makes no objection, that may be evidence of his assent to a sale by the clerk or sub-agent. Thus in the case of *Coles* v. *Trecothick*, 9 Ves. 236, the defendant had retained one Smith, an auctioneer, to sell his estate. The estate was sold by one of Smith's clerks, during his absence ; but it was proved, that the principal was informed of Smith's intended absence, and was informed by him, that he was in the habit of allowing his clerks to sign contracts, witness instruments, and conduct his business. Lord *Eldon* thought, that the evidence of the principal's assent to the sale by the clerk, was sufficiently express to bind him. But he reprobated the doctrine, that, if an auctioneer is authorized to sell, his clerks, during his absence, in consequence of any usage, are agents for the party who authorized him. And it is quite clear, that where there is no assent of the principal, either express or implied, an agent or attorney cannot delegate his authority to a sub-agent, so as to authorize him to bind the principal, especially in matters which require any degree of judgment or discretion however small. Now it appears from the evidence, that Pratt was left to exercise his judgment or discretion in some respects, although the business to be done

by him was not difficult. He was to ascertain the balance due on the old note, which he testifies he ascertained as well as he could from the information of one Drake, the clerk of Leach who was absent and had the orders, the evidence of payment, in his trunk in Boston. It does not appear that Pratt had any orders as to the discharge of the old note, and that he took a conditional discharge, which Allen objected to when it was shown to him. Pratt therefore had no directions to guide him in this respect, or he did not pursue his directions. Upon this evidence it cannot be said that Pratt acted in pursuance of particular instructions from Allen ; but in some respects he was allowed to be guided by his own judgment and discretion ; and we think it clear, that Allen could not delegate to him an authority so to act.

There is also another objection to the execution of the authority delegated to Pratt, which has much weight. The note purports to be signed by Pratt as agent and attorney of the defendants, and not by the order and command of Allen the agent.. By this mode of signing he holds himself out as agent of the defendants, and if they had paid the note without objection, it would furnish good presumptive proof of his authority to bind them in other cases. By this form of signing, Pratt must be understood as asserting the right to bind the defendants as their agent ; and by assenting to such a claim the defendants would be considered as sanctioning his claim, and would be bound by his acts although not authorized by Allen, unless the person dealing with him should have knowledge of the circumstances under which the note in question was signed. To allow a delegation of authority by an agent to a sub-agent, executed as this was, to bind the principal, would be dangerous, and we know of no principle of law which will sanction it. The case of *Emerson* v. *Providence Hat Manufacturing Co.*, 12 Mass. R. 237, is a strong case to support these objections. In that case it was decided, that although a general agent of a trading company, being himself also one of the company, may have authority to make promissory notes binding on the company, yet a sub-agent appointed by him would not have such authority. The note in that case was signed by the sub-agent, and was given for

a lot of furs purchased by him for the company and which went to their use. The sale was adjudged valid, because he held himself up as the agent of the company and had repeatedly purchased furs for them before ; but as there was no proof, that he had ever before assumed the authority to bind them by note, and as the general agent could not delegate his authority to him, the Court decided, that the note was not valid and binding on the company.

In delivering the opinion of the Court, the late chief justice remarks, " that although the general administration of the affairs of the company was intrusted to the general agent, we see no power given him to appoint sub-agents. Nor can such power be implied ; for a confidence is supposed to exist between principal and agent, which is not communicated to sub-agents, selected and appointed only by the agent. There is no doubt, that the clerks and other persons necessarily employed by the general agent to execute the business of the company, may be considered their servants, as far as their instrumentality is necessary for the due execution of the general concerns of the company ;" " but it would not be safe to allow persons of this description to make promissory notes, or other written contracts, to bind the company." The case also of *Blore* v. *Sutton*, 3 Meriv. 237, is a very strong case in support of the objections of the defendants' counsel, as to this point of the case. That was a bill for a specific performance of an agreement for a lease evidenced by a memorandum in writing, entered in the book of an authorized agent, but not signed by him, and it was held not to be binding on the principal, although it was signed by the agent's clerk, and by his direction. So the case of *Coles* v. *Trecothick*, before cited establishes the same general principle, and we have not found any authority or dictum to the contrary.

*New trial granted.*