Shaw, C. J.
On the facts reported, the plaintiff insists in point of law: 1st, That the signature “ Horace Gray *168 and company ” to the notes is the proper name and signature of the defendants, adopted by them to authenticate their own contracts and obligations, and that they are bound by it, as a written contract of their own, received by the plaintiff as such, in satisfaction and discharge of the defendants’ debt to him, for goods sold and delivered; or, 2d, That if the signature “ Horace Gray and company ” is not the proper signature of the defendants, adopted and sanctioned by them, so as to make the instruments in question their own promissory notes, the notes were received under a mutual mistake of facts or under a mistake of fact on the part of the plaintiff, occasioned by the acts and conduct of the defendants’ agents, in consequence of which the plaintiff' supposed that he had received the security of the defendants, in satisfaction of the debt due to him from them for goods sold and delivered, when in fact, he had not received such security; that, therefore, the notes were but primd facie evidence of payment ; and not having been paid or negotiated, but held by the plaintiff, and brought into court ready to be cancelled, if not available as the notes of the defendants, that therefore the simple contract debt, for goods sold and delivered, at an agreed price, was not paid, and that the plaintiff was entitled accordingly to recover as for goods sold and delivered.
To this claim on the part of the plaintiff, the defendants filed the general issue, with a specification of defence, requiring the plaintiff to prove every thing necessary to enable him to maintain his declaration, and setting up as a defence to all claims that might be so proved, payment, accord and satisfaction, and that credit was given by the plaintiff exclusively to the mercantile firm of Horace Gray and company. At the trial, a great amount of evidence was introduced by the parties, respectively, to maintain their several claims and grounds of defence.
The questions, now to be considered, relate to the instructions given by the judge before whom the case was tried, and to his refusal or modification of those which he was requested by the defendants to give, but which he declined giving in the terms or to the effect prayed for.
*169 The presiding judge instructed the jury, that the case presented two general inquiries, namely : 1st, Whether there was an original indebtedness, on the part of the defendants, to the plaintiff, as alleged by him; and 2d, Whether such indebtedness, if it once existed, had been discharged to the extent of the notes declared on, which had been received by the plaintiff, with the signature of Horace Gray and company.
In regard to the first inquiry, whether the defendants became indebted to the plaintiff for the coals alleged to have been delivered under the contract, the case was submitted to the jury with instructions, which, we believe, were not excepted to by the defendants.
Upon the other point, the jury were instructed that the taking of a negotiable promissory note for a preexisting debt was primd facie a discharge of the original indebtedness ; that the burden of proof was on the plaintiff to show some sufficient and legal reason for taking the case out of the general rule that he must control the effect which the law otherwise gives to the acceptance of negotiable notes ; and that in the present case, as the notes purported to be the notes of third persons, the plaintiff had the further burden to show some sufficient reason, why the taking of them did not discharge all liability on the part of the defendants to the amount of such notes. The court are of opinion, that these directions were sufficiently favorable to the defendants, and had the verdict been the other way, the plaintiff would have had more cause to complain of them.
It is true, that it has long been held as the law of Massachusetts, that when the party bound to the payment of a simple contract debt gives his own promissory negotiable note for it, the law presumes such note to have been accepted in satisfaction and discharge of the preexisting debt, because the party receiving it relinquishes no security, but has the same responsibility for payment which he had before, with more direct and unequivocal evidence of the debt, and a more simple remedy for recovering it, and with power also by indorsement to transfer the whole interest in it to another. There *170 seems therefore to be no motive for retaining and keeping alive the original debt.
But the presumption that a negotiable note is taken in satisfaction of a preexisting debt and not as collateral security, is a presumption of fact only, and may be rebutted and controlled by evidence that such was not the intention of the parties; so that when the promissory note given is not the obligation of all of the parties who are liable for the simple contract debt, and á fortiori when the note is that of a third person, and if held to be in satisfaction, would wholly discharge the liability of the party previously liable, the presumption, if it exist at all, is of much less weight; and it is a question of fact, on the evidence, whether the promissory note, given on the one hand and accepted on the other, was in satisfaction and discharge of the original debt. Thus, in the early case of Maneely v. M’Gee, 6 Mass. 143, where the promissory note of one, who acted as agent and manager for the others, was taken for a debt due from four, it was held, upon rather slight evidence, that it was not intended, and therefore would not operate, as payment. So in the case of French v. Price, 24 Pick. 13, it was decided, that where several persons were liable for goods purchased by an agent, and the vendors knowing that others were liable, but without insisting on such liability, took the note of the agents alone, this was presumptive evidence of payment. But, said the court, it is competent for the plaintiff to rebut this presumption ; and they add, if there was any deception or fraud in the giving of the notes, or if they were accepted under an ignorance of the facts, or a misapprehension of the rights of the parties, the vendors ought not to be bound by the acceptance, but may repudiate the notes and rely upon the original contract of sale. The principle rests on the ground, that if the vendors know that others are liable, whether they know who those others are or not, they voluntarily waive their responsibility by taking the notes of a part only of those who are liable. So where goods are purchased for a company, and a note given therefor by one professing to act as agent of the company, and supposed to be duly authorized to give the note of the company, when it *171 appeared that the agent was not duly authorized, and the note was unavailing as the note of the company, although the holder might have treated it as the personal note of the agent, yet it was held, that the holder was not bound to do so, but might treat the note as void, and recover against the company on the original contract for goods sold. Emerson v. Providence Hat Manufacturing Company, 12 Mass. 237. And a receipt of payment given on the bill for goods sold, a receipt being by law explainable by evidence aliunde, does not bar the vendor from recovering for goods sold, where the acceptance of the note is not intended to enure by way of payment and satisfaction. Vancleef v. Therasson, 3 Pick. 12. So, if goods are sold to be paid for by a note made by one person and indorsed by another, and a note of a corresponding description is offered and received, and the goods are thereupon delivered, and it appears afterwards that the indorsement is a forgery, such delivery of the note is no payment, and an action will lie for the goods. Ellis v. Wild, 6 Mass. 321.
With this view of the law as to the presumption of fact, arising from the acceptance of a negotiable promissory note for a preexisting debt, whether it is the note of the same parties originally liable, or of some of the same parties, or the note, genuine or otherwise, of a third person, we repeat the opinion, that we think the general ruling under which the evidence went to the jury was correct, and was sufficiently favorable for the defendants. Under this ruling, as it appears by the report, the plaintiff took the burden of proof, and attempted to show that the notes were in fact the notes of the defendants, and that they had adopted as their mode of signature to contracts of this nature the form here used; and, secondly, that the plaintiff, having a legal demand against the defendants for goods sold, received the notes in question under a misapprehension, in fact, in respect to the identity of the concern designated by the signature of Horace Gray and company, with that designated as the Boston Iron company, and acted under-that belief; and that such belief was caused by the acts of the defendants and their agents, to whom was intrusted the superintendence and control of all their purchases and payments, and their business generally.
*172 We are then brought to the consideration of the defendants’ prayers for specific instructions, and the action of the judge upon them.
The first was, that the plaintiff, having counted upon these notes, and now seeking to recover on them, cannot at the same time aver that he has so surrendered the notes, that they do not amount to payment. The judge declined, but instructed the jury, that the plaintiff' was not precluded from now surrendering these notes, and recovering on the other counts, if he was not entitled to recover on the notes; if, in other respects, he was entitled to recover on the other counts for the goods sold. We do not perceive why a person may not declare on the original cause of action for goods sold, and also on a note given for the same cause, which the holder believes that the maker intends to resist, as void, for any cause ; they are two modes of claiming one and the same demand, to meet the evidence in the case. E he recovers on one of them he will not on the other. In New York, where a note is not primd facie payment, but may be, if so agreed, the cancelling of the note before bringing the action is not necessary to a recovery of the original debt; the rule is, that on the trial the court will not suffer the plaintiff to recover on the original consideration, unless he can prove that the note given for it is lost, or can then produce it to be cancelled; but it is no objection to such a recovery that the note has been indorsed to another, if it has been retransferred to the payee, and he has it at the trial ready to be cancelled, if he recover on the original consideration. This is obviously required to secure the defendant from being twice charged. Burdick v. Green, 15 Johns. 247; Hughes v. Wheeler, 8 Cow. 77.
But the defendants, as we understand the argument, insist that these two claims are not only inconsistent with each other, but are repugnant to each other, so that the assertion of one is a denial of the other; and thus, if the plaintiff claims for the goods sold, the claim assumes that the notes given for them are not the notes of the defendants ; but they are the notes of some party, and if not the notes of the defendants, they are the notes of Horace Gray and company; *173 and the plaintiff, after recovering of the defendants for the goods, may recover of Horace Gray and company on the notes, who would have no defence against them. But we think this argument is not well founded. It may be true, that if the plaintiff, in the first instance, had chosen to treat the notes as the notes of Horace Gray and company, the latter might have been barred by the doctrine of estoppel, from denying that they were bound by the notes; but the holder having elected to treat them as the notes of the defendants, made by the instrumentality of Horace Gray and company, and having declared on them as such, and more especially having obtained judgment on them, or on the consideration for which they were given, the plaintiff would be estopped from proceeding against Horace Gray and company; and by a well-known technical rule, there would be estoppel against estoppel, which would let in the truth, or in other words, the plaintiff would be precluded by his own acts from making any such claim. Besides, looking at the subject in a more direct and practical view, if the plaintiff in this suit recovers on the notes, they will be merged in the judgment and effete ; if he recovers on the count for goods sold, the notes will be cancelled, and impounded here, and can never be used against Horace Gray and company. Precisely the same course was adopted in the case of Emerson v. Providence Hat Manufacturing Company. There, no doubt, the plaintiff might in the first instance have proceeded against Roberts, the agent, but having elected to proceed against the company, it was not suggested that he could afterwards proceed against the agent.
The second prayer for instructions was : That the defendants’ corporate name not appearing on the notes, and the notes on their face not disclosing any agency, Horace Gray and company, and not the corporation, were bound by these notes. This instruction was given, as the defendants insist, with such qualifications and restrictions, as take away the whole legal effect and operation of it. This is true, and it leads to the other principal question in the present case. It is undoubtedly true, that the notes were not signed in the defendants’ regular corporate name, by which they were incor *174 porated ; that the notes on the face of them did not disclose any agency ; and that they were signed by Horace Gray and company, who had a separate firm and house of trade of that name. If it were an absolute and unqualified rule of law, that upon these facts Horace Gray and company and not the corporation were bound, and the judge was bound so to instruct, of course that would put an end to the question, whether these notes could be the notes of the defendants. The court did give the instructions prayed for, but with this qualification, that the ruling was not to be understood as preventing the plaintiff from maintaining his action, if the jury were satisfied: 1st, That these notes were in fact the notes of the Boston Iron company executed under a name adopted and sanctioned by them as indicative of their contracts ; or 2d, That the plaintiff received these notes upon a legal demand against the defendants, under a misapprehension of the facts, as to the matter that Horace Gray and company and the Boston Iron company were not the same ; the plaintiff acting under the belief that they were, and such belief being induced by the acts of the defendants or their legal agents.
The effect of the instruction thus given, we think, was, that the facts mentioned in the prayer for instructions, to wit, the corporate name not appearing on the notes, and the notes not disclosing any agency, but signed Horace Gray and company, constituted prima facie evidence, that those were the notes of Horace Gray and company and not of the Boston Iron company ; and standing alone would warrant and require the direction, that Horace Gray and company and not the Boston Iron company were bound by them; but that this evidence might be rebutted, and controlled by proof aliunde that they were in fact the notes of the Boston Iron company, because executed under a name adopted and sanctioned by them as indicative of their contracts, and it may be added, given in satisfaction of their debt.
The court are of opinion that this direction was correct. If by any possible proof, the presumption, arising from the face of the note, from the form of the execution, from the corporate name of the company not being used, and the use of the name *175 of a mercantile firm, could be rebutted, then the evidence was primd facie, and not conclusive. It seems to be now well settled, in this commonwealth, since the great multiplication of corporations, extending to almost all the concerns of business, that trading corporations, whose dealings embrace all transactions from the largest to the minutest, and affect almost every individual in the community, are affected like private persons with obligations arising from implications of law, and from equitable duties which imply obligations; with constructive notice, implied assent, tacit acquiescence, ratifications from acts and from silence, and from their acting upon contracts made by those professing to be their agents; and, generally, by those legal and equitable considerations, which affect the rights of natural persons. We are not dealing here with the weight, force or effect of the evidence, but only whether any evidence aliunde, could control the presumption arising from the notes; and we think there was evidence competent to go to the jury, from which they might infer that the defendants had so adopted a name, other than their corporate name, for the special purpose of giving notes, as to be bound by it when used by a general agent, in liquidation of then own debts.
This results from a series of decisions both in England and in this country, but particularly in America, quite too numerous to be reviewed here. I will allude to a few. In the supreme court of the United States, in the case of Bank of Columbia v. Patterson, 7 Cranch, 299, it was held, that a corporation might be bound both by express and implied provisions, and that by acting on the contracts made by their agents, they adopted and ratified them. In the case of United States Bank v. Dandridge, 12 Wheat. 64, the subject was considered at great length, and it was held that a corporation is bound by the same presumptions which would affect a natural person ; that the authority of agents may be proved from their acts, and that corporations may be affected by paroi proof and presumptions of fact, in the same manner as natural persons. The case is an instructive one, and though the chief justice dissented, it has generally been acquiesced in as sound law. In Massachusetts, in the case of Canal Bridge v. Gordon, 1 Pick *176 297, it was held that a corporation could be bound without vote or deed by implication from corporate acts. This proceeded on the broad ground, that corporations can be bound by implication as well as individuals. In Minot v. Curtis, 7 Mass. 441, 444, the court say: “ We know not why corporations may not be known by several names, as well as individuals.” As that case arose on pleading, the court further say, that if this point had been open to the jury as á question of fact, the defendants would have been bound to prove the identity of the parish thus acting under different names. This, of course, could be done by any proof tending to establish such identity. The case of Medway Cotton Man. Co. v. Adams, 10 Mass. 360, is in point with the present, except that there the corporation was plaintiff, whereas here it is defendant. The averment was, that the defendants, by their promissory note, &c., promised the said Medway Cotton Manufacturing company by the name of Richardson, Metcalf and company. That came before the court on demurrer, and the declaration was held good. The opinion of the court was given by Sewall, J., who states the principle on which it was founded. He says, it was a question of identity, which was sufficiently there stated by way of averment, to be good on demurrer, but had it been traversed or tried, would, as he states, depend on an inquiry of facts, which might or might not be proved, and might be provable by evidence extraneous to the note. The same point was subsequently decided in the case of Commercial Bank v. French, 21 Pick. 486.
Without going more at large into authorities that a corporation may have several names, I will cite the third edition of Angell and Ames on Corp. 206, (4th ed. § 234,) which lays down the rule, that the misnomer of a corporation in a grant, obligation, or other written contract, does not prevent a recovery thereon by or against the corporation in its true name, provided its identity with that intended by the parties to the instrument is averred in pleading, and apparent in proof; and the authors cite many cases in support of the rule thus stated. The court are therefore satisfied, that it was competent for the plaintiff, if he could, to show by evidence, that the notes were *177 in fact the notes of the defendants, given in a name adopted by them to authenticate their contracts; and therefore that the modification prescribed to the rule asked for by the defendants, and given, was correct, and adapted to the case then in proof. In this connection, several authorities were cited to the point, that when a creditor, knowing that one acts as agent for a principal in making purchases, takes the note of the agent, without that of the principal, he waives the reponsibility of the principal, and gives credit to the agent. This principle, though to be taken with some qualifications,* is no doubt correct, but not applicable to the present case.
The ground of the plaintiff is, not after taking the note of the agent to resort back to the principal, but to show that the note taken was in fact and in legal effect the note of the defendants. It was urged, in this connection, that the court should have given an opinion on the questions of law stated in this prayer for instructions, and upon the facts there stated; but as we understand it, these facts were only a part of the evidence; there was much other evidence which was competent, such as the fact, that the company had no meetings except a formal annual meeting; that there was no vote appointing Horace Gray and company agents, or appointing any agent, or prescribing the powers of agents; that a large amount of business was done by and in the name of the Boston Iron company, in the way of purchases, sales, and other dealings, which was done wholly by Horace Gray and company ; that these were open and notorious, from which constructive notice to the company might be presumed ; from all which a jury might infer the authority which is the subject of inquiry. If so, the judge-could not be called upon to express an opinion on a question of law, arising from a part of the evidence ; the only question is, whether the judge was correct in submitting the evidence to the jury ; and he was so, if there was competent evidence proper for their consideration, and *178 from which they might infer the fact sought to be proved. Shaw v. Woodcock, 7 B. & C. 73.
Under this same objection, also, the question was discussed, whether a corporation can adopt the name of a mercantile firm, and bind themselves by notes given in its name. It may not be a wise arrangement, but we are not prepared to say they cannot do it. Suppose the case, which actually occurred, as appears in the case of Goddard v. Pratt, 16 Pick. 412, that a manufacturing corporation pass a vote or by-law, providing that all their mercantile business shall be done and contracts made in the name of a partnership, whose stock they have taken, and to whose business they have succeeded. This may be wise in such a case, in order to keep up an established, extensive, and valuable correspondence, and retain the run of custom and good-will of an old established firm. That case was the reverse of the present, and the struggle there was to charge the firm, who defended on the ground, that their firm name designated the obligations of the company, and not their own; and the case turned on the question, whether the plaintiff, when he dealt with them, knew of the dissolution of the old firm; if he did not, then by a well-known rule of the law of partnership, the firm was bound to him, not having given notice of their dissolution. Had the point in that case been whether the corporation were bound, we can have no doubt that they would have been held bound by their vote for notes made in the name designated.
It was further relied on by the defendants; that it was not the intention of Horace Gray and company to give the note of the Boston Iron company, even if they had authority so to do; but further, that there was no evidence that they had such authority. In regard to the first, it depended wholly upon the weight or sufficiency of the evidence, which, for reasons already given, we do not go into. As to the authority, it requires some further consideration. Undoubtedly, to charge a party by the act of an agent, and corporations can be charged in no other way, it is incumbent on the plaintiff to prove the authority of the agent. But how is such authority to be proved ? No doubt, the vote of the corporation entered on their records or minutes *179 is the regular and proper evidence ; but suppose they pass no votes, or keep no records, or refuse to produce them, and yet de facto transact a large amount of business. If the authority of agents could be proved in no other way than by the production of such a vote, those who deal with them would have but a precarious security for their rights. But we think that it is established by the cases cited, and by many others which could be produced, that having proved the constitution .of a corporation by the act of incorporation, and the acting under it by the persons incorporated and their associates, the powers of agents as well as any other fact necessary to charge them may be proved by corporate acts, and by the acts of persons professing to be their agents and servants, and the tacit acquiescence of the corporation. This was decided in the cases of Narragansett Bank v. Atlantic Silk Company, and Westcott v. Same, 3 Met. 282. In these cases, the defendants had refused, on notice, to produce their records. But so far as third persons are concerned, the production of books, which contain no entry on the subject, is the same as if they had refused on notice to produce their books. Corporations, like natural persons, may be bound by such acts, as proving either a previous authority or a subsequent ratification. When a corporation consists of a small number of persons, like a partnership, they may transact all their business by conversation, without formal votes ; and it would be a violation of the plainest principles of justice, to hold those who deal with them to prove all their acts by written votes, which they do not keep or do not produce. And inasmuch as the powers of agents may be proved by extraneous evidence, the extent and limitation of their powers may be proved in the same manner. And when general and very large powers are exercised by an agent or firm apparently intrusted with the entire business of the corporation, and no vote appears on the production of their records, prescribing or limiting their powers, the corporation are as well bound by the declarations and statements of such agents, upon the subject of the dealings of the corporation, and whilst acting therein, as by their acts and contracts. Such declarations and statements of agents, made in connection with their dealings, are res gestee
*180 The next objection is to the qualification annexed by the judge to the sixth instruction prayed for and given. The objection is that it assumed a hypothetical case, of which there was no evidence. Whether there was any evidence we cannot judge; but if there was, none, it was a mere illustration and explanation of a rule of law, which could not mislead the jury. Dole v. Thurlow, 12 Met. 157.
The next question turns upon the eighth request for instructions. The prayer is as follows: The judge is requested to instruct the jury, “ that the acts of Horace Gray and company, and the knowledge of Horace Gray and company, are not the acts and knowledge of the defendants, except in those matters which were within the scope of their authority as agents; and that if they, without authority from the defendants, held out to the public that the names of Horace Gray and company would bind the defendants, the defendants were not bound by the knowledge of Horace Gray and company that they had so held themselves out; and it was necessary to bring home knowledge to the defendants in some other way than by showing knowledge by Horace Gray and company.” This instruction was given, and the position there taken, and the principles of law therein stated declared to be correct, but accompanied with the further instruction, that if Horace Gray and Horace Gray and company were the general and only agents of the defendants, vested with full powers to act in their behalf in all matters of purchase and sale, and in giving notes, and in all tfie business of the defendants; and the concerns of the Boston Iron company, in the way of business, were wholly transacted by them, and no others, and that such had been the case for a series of years, and this had knowingly been permitted by the defendants; then it was competent for the jury to find, that the defendants had notice of these acts of using the signature of Horace Gray and company for the Boston Iron company, as promisors of notes, and to infer that they had sanctioned them. Whether these acts were so frequent, and of such a character, as to satisfy the jury that Horace Gray and company did so conduct, &e., was wholly left to the jury, under the various instructions given in the case.
*181 The court are of opinion, that this instruction, as given to the jury by the presiding judge, with this qualification and commentary on the evidence, was correct.
The request for instructions assumed a state of facts, which did not constitute the whole case. If the request was founded on the ground, that the agents had no authority to use any other name than the corporate name of the defendants, in giving notes; and that it could not be within the scope of their authority to do so, without express authority or without a vote, or the production of written authority; then, for reasons already given, we think it was not correct in point of law, and ought not to have been given. But if such authority, like all other authority, could be proved by evidence aliunde, then the only question was, what was their authority, what were its extent and limits, and whether the acts and declarations in question were within its scope ; and then it seems to us, that it was proper, and that the judge was bound, to add the qualifications stated, and to submit the question to the jury.
Some objection was made that the judge declined to give the seventh instruction requested, that if the plaintiff, at the time of the delivery of the last two cargoes of coals to the Massachusetts Iron company, knew that they were to be used by them, and in point of fact Horace Gray and company, as agents of the Boston Iron company, had no authority to deliver coals of the Boston Iron company to the Massachusetts Iron company, the plaintiff could not charge the defendants for those deliveries. This assumes the whole question in controversy, that these agents had no authority to sell. But it does not turn upon that; the effect of the instruction was, that if the goods were delivered at places designated by the defendants’ agents, being the same agents by whom they were purchased, this was a good performance of the contract, without regard to the question whether they were to be used by the defendants or not. This, we think, was correct.
Judgment must therefore be entered on the verdict lor the plaintiff.

 Thomson v. Davenport, 9 B. & C. 78. In this case Littledale, J., says, “ The general principle of law is, that the seller shall have his remedy against the princinal rather than against any other person.”