## ROGERS *versus* MARCH.

In view of all the parts of an unsealed contract, signed as agent by one having authority so to sign, the agent will not be bound by it, if it be apparent that the intention was to make it the contract of the principal and not of the agent.

To this rule there is an exception, upon the ground of commercial policy, that agents, acting for *merchants* resident abroad, are held personally liable upon contracts made by them for their employers, whether the contracts do or do not show the agency.

This exception does not extend to a contract, made in this State, by one resident here, for personal services to be rendered in a foreign country.

ASSUMPSIT per account annexed to the writ, and upon a written contract.

The account was as follows:—

"Leonard March

To Rufus Rogers,          Dr.

1846.

| | | | | |
|---|---|---|---|---|
| January. | For 8 days services, planning and giving advice for Boom, $5,00, | | $40 | 00 |
| | " expenses to and from Bangor, | | 23 | 00 |
| February. | " making model of piers of Kesway boom, drawing and making plan of same, and calculating dimensions of same, | | 50 | 00 |
| March. | " time and expenses of hiring men, | | 17 | 50 |
| April. | " 13 days work, a $7,00, | | 91 | 00 |
| | " expenses paid, | | 26 | 99 |
| | | | 248 | 49 |
| | Services per agreement | | 800 | 00 |
| | | | $1048 | 49 |

The following is a copy of the contract.

"I will give Mr. Rufus Rogers, eight hundred dollars for the route from April 8th to September 1st, and expenses both ways—meaning to leave Topsham 8th April, and Fredericton Sept. 1st. Should we detain him longer than Sept. 1st at boom, we will allow him seven dollars per day for every day after Sept. 1st that he is detained at the boom.

"L. March, Agent of Fred. Boom Co."

"Bangor, Jan'y 15, 1846."

" Should we require you to work on Sundays, to be allowed extra, at the rate of seven dollars per day. Should we get through the work of the boom before Sept. 1st, no discount to be made. L. M."

The parties to this suit are citizens of this State, the plaintiff residing at Topsham, and the defendant at Bangor. The Fredericton Boom Company was incorporated by the Legislature of the Province of New Brunswick, and is legally established and located in a foreign country. The defendant was its authorized agent, with power to employ persons for the company.

Pursuant to the contract, the defendant went to Fredericton, New Brunswick, where he labored upon the company's boom for a few days, till discharged by the defendant.

Each party put into the case depositions and letters.

The defendant also introduced two receipts signed by the plaintiff, which were as follows : —

" Fredericton Boom Co., to Rufus Rogers, Dr.

| | |
|---|---|
| Expenses from Topsham to Fredericton and returning, | $52 65 |
| 17 days time, | 34 00 |

£21 12 3. $86 45

" 18th Feb'y, 1845. — Rec'd pay't of Oliver Frost, agent.
" Rufus Rogers."

" Received of L. March, as agent of F. Boom Co., one pound, about April 6, 1846 ; also two pound ten shillings about May 12 ; also twenty-five pound this day, to be accounted for on settlement. " Rufus Rogers."

" £28 10

$114 00 May 14, 1846."

One of the plaintiff's deponents testified that Oliver Frost was agent of the company for 1845.

The following are extracts from letters written by the defendant to the plaintiff, after the contract was made : — " I have hired all the men I shall want from this way :" — " I want

you to be here and go down with me;" " I have ordered the timber." " I want you to write me in season." " Give me your ideas on the subject;" " I do not like to advance on last year's price." " I think we had better go early, should like to have you arrange to be ready."

The case was submitted to the Court, with power to draw inferences of fact.

*Shepley & Dana* for the plaintiff. 1. The evidence sufficiently shows that the contract was entered into by the defendant personally, and that he bound himself, as an individual to pay the plaintiff.

It is Leonard March who promises to pay ; his signing as agent has not altered his liability. The statute, chap. 91, sec. 14, treats exclusively of conveyances and contracts relating to land, and does not apply to this case. 1 Greenl. 231, 237, and 339.

" It is not sufficient that a person, in order to discharge himself from a promise in writing, should show, that he was in fact the agent of another, but it should be made to appear that he treated as agent *and actually bound his principal by the contract.*" " Nor is it sufficient that the agent describe himself in the deed or contract as acting *for* and *in behalf* or as *attorney of* the principal, for *if he do not bind his principal* but set his own name and seal, such expressions are but *designatio personæ ; it is his own act and deed, and he is bound personally.*"

To discharge himself the agent *must give a right of action against his principal ;* here March has done no such thing. The writing is the only evidence of the contract, and plaintiff must have introduced it to maintain an action.

The Boom Company is not within this jurisdiction, a suit against it, then, must have been brought in New Brunswick, where it was located, but no suit could for a moment be maintained there on such a contract, for it is not stamped, and by the laws of that dominion a stamp is indispensable. Giving then no right of action against the company, the inference is irresistible, that he *intended* to bind himself.

It is evident from the contract, that for a portion of the work at least, March promised, in his individual capacity to pay. He does not even sign as agent.

2. The defendant, if acting as an agent, was a resident agent of a foreign principal. In such cases, the credit is presumed to be given to the agent, and he is treated as the principal. 3d ed. Story on Agency, sect. 268, 290 and notes ; 2 Kent's Com. 5th ed. 629, 630 ; *Tainter* v. *Pendergrast,* 3 Hill, 72–3 ; *Paterson* v. *Gaudesequi,* 15 East, 62 ; *Thompson* v. *Davenport,* 9 B. & Cr. 78 ; *DeGaillon* v. *L'Aigle,* 1 B. & P. 368; *Houghton* v. *Matthews,* 3 B. & P. 490 ; Chitty on Contracts, 230, 6th American edition.

*J. & M. L. Appleton,* for the defendant.

WELLS and HOWARD, J. J. having been of counsel, took no part in the decision.

SHEPLEY, C. J. and TENNEY, J. concurred in the following opinion, drawn up by

TENNEY, J. — The evidence in the case shows fully, that "the Fredericton Boom Company" received the benefit of the plaintiff's services so far as they were rendered. This was a company duly incorporated, and organized in the province of New Brunswick. The performance of the services for the company, aside from any express agreement made by the plaintiff, would imply a promise in it, to make compensation therefor.

But the plaintiff relies upon a contract in writing dated at Bangor in this State on January 15, 1846 ; and contends that it is the agreement of the defendant to make payment for those services, and not that of the company ; and that by the request of the defendant therein contained, he performed the services, or was ready to do so. It is further contended in behalf of the plaintiff, that if the agreement should be construed to be that of the company, the defendant is still liable, he being the agent of the company, resident in the State where the plaintiff also resides, and where the contract was made.

By R. S. chap. 91, sect. 14, it is provided, that all deeds and contracts, executed by an authorized agent for an individual or

corporation, either in the name of the principal by such agent, or in the name of such agent, for the principal, shall be considered the deed or contract of such principal." This is substantially a reënactment of the statute, chap. 220, passed in the year 1823. Both are in affirmance of the common law, so far as it is applicable in this respect to unsealed, written contracts. Story's Agency, sections 154, 261, 263. The rule is laid down by Judge Story in these words, "If it can upon the whole instrument be collected, that the object and intent of it are to bind the principal, and not merely the agent, courts of justice will adopt that construction of it, however informally it may be expressed." The case of *Mann* v. *Chandler*, 9 Mass. 335, was a suit upon notes of hand, in the words, " I, the subscriber, treasurer of the Dorchester Turnpike Corporation, for value received, promise Seth Mann, to pay him or bearer," &c. and they were signed " Gardner L. Chandler, treasurer of Dorchester Turnpike Corporation." The Court say in their opinion, " Here it cannot be doubted, the corporation is itself liable. The consideration moved wholly from them. It is very apparent, that the plaintiff did not at the time of receiving the notes, look to the defendant's personal security. The whole transaction was in behalf of the corporation. The property is liable and the defendant is not." A note in the words, " *I* promise," &c. and signed by one person, *pro* another, named, was held to be the note of the latter. *Long* v. *Colburn*, 11 Mass. 97 ; *Emerson* v. *Prov. Hat Man. Co.* 12 Mass. 237 ; *Ballou* v. *Talbot*, 16 Mass. 461 ; *N. E. Ins. Co.* v. *De Wolf*, 8 Pick. 56.

Decisions upon this question have not been entirely uniform. It has been held, that the party signing the instrument, and adding to his name the agency, which he had, was personally liable, and that the addition was only *descriptio personœ*. Some of these cases do not seem very clearly distinguishable from those before cited, where a different construction was adopted. In some of them was involved the question, whether the person who signed, with the addition of agent, had any authority from the principal to contract in his behalf; and in the dis-

cussion of that question, there has been an indistinctness in reference to the other. Judge Story, in a note to sec. 154, in his treatise on Agency, says, " It is not easy to reconcile all the cases in the books upon this subject ; though I cannot but think, that the true principle to be deduced from them is that stated in the text."

The case before us finds, that the defendant was the agent of " The Fredericton Boom Company," at the time, when the contract was executed, and that he had authority to contract with the plaintiff for the company and to make them liable. In looking at the agreement, it has the appearance of being drawn in haste ; but it is manifest, when taken together, that it was the intention of the defendant to bind the company and not himself individually. In the beginning of the contract, the language is, " *I* will give," &c. but that must be considered in connection with what follows, and with the signature, where his agency is added. In the latter part of the contract, the language is inconsistent with the hypothesis, that the company was not designed to be made responsible. It is, *we* will allow seven dollars per day, &c. for any time, that *we* shall detain you at the boom ; and in case *we* should require you to work on Sundays, an extra allowance was to be made. And no discount was to be made, if *we* get through the work before the time, for which the plaintiff was engaged.

In the account annexed, are certain charges for services not falling within the terms of the written contract, and there is no evidence of any promise of the defendant in reference thereto. But there is in the case a bill of the plaintiff rendered under a former agency, made against the company, and re-ceipted. A receipt of the plaintiff also, dated May 14, 1846, in which he acknowledges the payment of £28,10, by the defendant as agent of the company. These show, that for certain services performed, and a part charged in this suit, he looked to the company for payment.

" No rule of law is better ascertained, or stands upon a stronger foundation than this ; that when an agent names his principal, the principal is responsible, not the agent." *Hartop*

*ex parte*, 12 Vesey, 349 ; Story's Agency, sect. 261 and 263.
To this rule there is an exception, upon the ground of general
convenience, and the usage of trade, that agents and factors
acting for merchants resident in a foreign country, are held
personally liable upon all contracts, made by them for their
employers, and this without any distinction, whether they de-
scribe themselves in the contract as agents or not. In such ca-
ses it is presumed the credit is given to the agent or factors.
And this exception becomes a general rule, within the scope
of its application. Story's Agency, sect. 268. A reason given
for this rule is, that there is no other known responsible prin-
cipal. But Judge Story remarks, that it "is founded on a
broader ground, the presumption, that the party dealing with the
agent intends to trust one, who is known to him, and resides
in the same country, and subject to the same law as himself,
rather than one, who if known, cannot from his residence in a
foreign country, be made amenable to those laws, and whose
liability may be affected by local institutions, and local exemp-
tions, which may put at hazard both his rights and his rem-
edies." *Ibid.* 290. "This doctrine is in conformity to the
general usage of trade ; and it was in all probability originally
derived from it, as affording a just exposition of the intentions
of all parties, and as being founded in public policy and conve-
nience and in the safety, if not the necessities of commerce."
— *Ibid.* 400.

But we have been directed to no authority, where the rule
has been held so broad as to embrace the case of personal ser-
vices performed in a foreign country, for one residing there, al-
though under a contract made in the country, where the one,
who engaged to perform the services, resided. The reason of
the rule will not extend to such a case. It is well settled, that
where the acts stipulated in a contract are to be done, not in
the country where the contract is made, but in another coun-
try, the laws of the latter are to govern in the performance.
Story's Confl. Laws, sect. 280. And where the rule, to which
we have referred, in mercantile transactions, is founded on the
principle, that one would be unwilling to look to a resident of

Rogers *v.* March.

a foreign country, perhaps unknown to him, and expose himself to the inconvenience, the risk, the expense and uncertainties attending the enforcement of a contract, in that country, it cannot apply to a contract, whereby a party agrees to go to a foreign country, to render services for a resident therein, to be under his direction, knowing that in the performance, he is to be governed by the laws of that country. Where too, he is supposed to be entitled to compensation for his labor, immediately on the performance of the contract therefor, it is not to be presumed that he would voluntarily postpone to a distant time the receipt of payment.

But it is insisted, that in order to discharge himself, the defendant must have given to the plaintiff a right of action against the principal; and the written agreement being the only valid proof of the contract, it fails of being sufficient against the company, because it is not stamped, according to the supposed law of New Brunswick.

Courts cannot take official notice of the local laws of foreign countries, without proof of their existence. If important in the trial of actions, they must be shown by evidence like other facts. The case does not find, that the laws of New Brunswick are such as has been stated in argument.

But if it were shown by competent evidence, that such is the law of the country, where the contract in question was to be performed, it is believed that it would have no effect in the decision of this case. This contract was made in this State, and every person is supposed to submit himself to the laws of the place where he makes the contract, and silently assent to its action upon his contract. The law of the place of the contract is to govern. " *Locus contractûs regit actionem.*" Story's Confl. Laws, sections 261, 263, 289. When a contract is made in one country, for the payment of money in another, and by the laws of the latter a stamp is required, and not by those of the former, it has been held, that it is not governed by the *lex solutionis*, upon the ground, that an instrument as to its form and solemnities, is to be governed by the *lex loci contractûs*, and a stamp is not required by the principle. *Ibid.* 318.

The requirement of stamps in other countries is a part of the revenue laws of those countries. In *Holman* v. *Johnson*, Cowper, 343, Lord MANSFIELD, C. J. says, "no country takes notice of the revenue laws of another." *James* v. *Catherwood*, 3 Dowl. & Ry. 190.                    *Plaintiff nonsuit.*